**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RONALD E. TATE, ) | CASE NO. 1:12-cv-2332 |
| ) | |
| Petitioner, ) | JUDGE JAMES G. CARR |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| BARRY GOODRICH, Warden ) | |
| ) | |
| Respondent. ) | **REPORT AND RECOMMENDATION** |
| ) | |

Petitioner, Ronald E. Tate ("Tate"), challenges the constitutionality of his conviction in the case of *State v. Tate*, Lake County Court of Common Pleas Case No. 09-CR-000748. Tate, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on September 18, 2012. On March 29, 2013, Warden Barry Goodrich ("Respondent") filed his Answer/Return of Writ.  (ECF No. 5.)  Tate filed a Traverse on June 5, 2013.  (ECF No. 7.)  For reasons set forth in detail below, it is recommended that Tate's petition be DENIED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Tate's conviction as follows:

[*P3] Mr. Tate was indicted on one count each of aggravated robbery, complicity to aggravated robbery, theft, complicity to theft, and having weapons while under disability. The former four counts were each accompanied with a firearm specification and forfeiture specifications.

[*P4] These charges stemmed from Mr. Tate's involvement in a robbery in Willowick. The state alleged he drove his vehicle, with a co-defendant as passenger, to the victim's house to sell him $1,200 worth of Oxycodone. When Mr. Tate arrived, he instructed the victim to get into the back seat of his vehicle to complete the transaction. As Mr. Tate backed the car out of the victim's driveway, his co-defendant pulled a handgun on the victim and robbed the victim of money, an iPhone, and a container with some pills.

[*P5] Mr. Tate waived his right to be present at the arraignment and a "not guilty" plea was entered on his behalf. His appointed counsel then filed a motion to suppress. On the day of the suppression hearing, Mr. Tate asked to discharge his appointed counsel and retain private counsel. The court granted the request and set a pre-trial hearing. Mr. Tate failed to appear at the scheduled hearing and a warrant was issued for his arrest. The suppression hearing was then continued upon his request. He appeared at the suppression hearing but withdrew his motion to suppress. The case was then set for trial.

[*P6] On the day of trial, immediately before the jury was to be empanelled [sic], Mr. Tate asked the court to discharge his privately-retained counsel. He reported to the court that he did not feel his attorney would represent him to the fullest of his capability, due to compensation issues. He stated to the court:

[*P7] "Mr. Morgan made it pretty clear to me that he was not going to represent to [sic] me to the fullest of his capability, because I didn't have any money for him. I only ? I only paid a little bit of money. I owe way — way more."

[*P8] His attorney, however, indicated to the court he was prepared and ready to go to trial, stating:

[*P9] "Your Honor, I've never laid down in Court in my 20 some years. The issue of compensation is an issue between Mr. Tate and myself, not between the Court and myself. Despite whatever that may have occurred, I've always assured him that I'm going to fight for him in the Courtroom."

[*P10] Mr. Tate also complained to the court that his attorney was not prepared. In response, his attorney stated: "Your Honor, I'm prepared. I've been out to visit him in jail four or five times. I had the file, reviewed the file, gone over it with him."

-2-

[*P11]  After the reassurance from counsel, the court stated: "[A]ll I need to know, and I've heard it, is Mr. Morgan is prepared and ready to go.  I've always known him to be.  Money's not going to stand in the way of his giving effective representation.  That's just not what somebody puts their reputation on the line to do."

[*P12]  Mr. Tate then claimed that his attorney lied to his family about a statement allegedly having been made against him and that his attorney tried to get him to "cop out."  The court stated in response:

[*P13]  "Well, trying to get you to cop out is, quite frankly, in some respects part of a lawyer's job, to be honest, to show candor, and be candid with you.  He may have his beliefs that you should take a plea bargain.  You don't have to.  Obviously, you have not and it certainly is your choice, but it's the attorney's obligation to at least lay it all out for his client, and to make sure the client fully understands and appreciates what he's up against.  That's his job.  Now, whether you accept his advice and recommendations, whether you take a plea that might be offered, that's your decision.  And you have exercised your right to make that decision.  But you can't hold it against your attorney for using his knowledge and information and making a recommendation to you.  That's not a good reason [for substituting counsel]."

[*P14]  After stating "Mr. Morgan is here, he's prepared, he's ready to go forward," the court denied Mr. Tate's request for a change of counsel. It made the following finding:

[*P15]  "The Court specifically finds that there has not been a complete breakdown in the representation that would render Mr. Morgan's continued representation ineffective assistance of counsel.  Any personal conflicts that exist appear not to have [affected] the preparation and the ability of Mr. Morgan to proceed with the defense of Mr. Tate.  It appears Mr. Morgan has given some honest appraisals and opinions to his client.  The client may have disagreed, but that in itself is not the complete breakdown that is contemplated by the Supreme Court rulings in terms of when an attorney should be replaced.  And he's privately hired, he's been hired by you, not appointed by the Court.  So, the request and motion to replace counsel at this time is denied."

[*P16]  The transcript reflects after the court denied Mr. Tate's motion to replace counsel, a recess was taken.  After the recess, Mr. Tate's counsel represented to the court his client wished to plead guilty to all the counts in the indictment, with the firearm and  forfeiture specifications removed from all but the aggravated robbery count.  The parties also made a joint recommendation for a minimum sentence: three years on aggravated robbery and three years on the accompanying gun specification, with concurrent sentences on the remaining counts, for a total

>of six years of imprisonment.
>
>[*P17]  The court then conducted a lengthy and extensive plea colloquy.  Mr. Tate waived a presentence investigative report, and the court imposed a prison term in accordance with the jointly recommended sentence.
>
>[*P18]  A week later, Mr. Tate wrote a one-paragraph letter to the trial court, expressing his desire to withdraw the guilty plea because "I felt that I had insufficient counsel and that I was not represented in the proper manner.  I also feel I was pressured into making the plea without fully understanding my options."  He did not attach any affidavit or other evidentiary materials to the letter/motion.  The trial court, without an oral hearing, denied his request to withdraw his guilty plea.

*State v. Tate*, 2011 Ohio App. LEXIS 2794 2011-Ohio-3293 at ¶¶3-18 (Ohio Ct. App., Jun. 30, 2011).

## II. Procedural History

### A. Conviction

During the October 2009 term, a Lake County Grand Jury charged Tate with one count each of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01(A)(1), complicity to aggravated robbery in violation of O.R.C. § 2923.03(A)(2), having weapons while under disability in violation of O.R.C. § 2923.13(A)(3), theft in violation of O.R.C. § 2913.02(A)(4), and complicity to theft in violation of O.R.C. § 2923.03(A)(2).  (ECF No. 5-2, Exh. 2.)  All, except for the weapons under disability charge, carried firearm and forfeiture specifications.  *Id*.

On June 2, 2010, Tate entered a written plea of guilty to all five charges, including only the firearm and forfeiture specifications associated with the aggravated robbery count.  (ECF No. 5-4, Exh. 4.)  On the same date, the trial court sentenced Tate to an agreed upon aggregate prison term of six years.  (ECF No. 5-5, Exh. 5.)

One week later, on June 9, 2010, Tate, *pro se*, filed a motion to withdraw his guilty plea asserting that he felt his counsel was insufficient and pressured him into a plea without Tate fully understanding his options. (ECF No. 5-7, Exh. 7.) The motion was denied without hearing on July 9, 2010. (ECF No. 5-9, Exh. 9.)

**B.  Direct Appeal**

On August 3, 2010, Tate, *pro se*, filed a timely Notice of Appeal with the Court of Appeals for the Eleventh Appellate District ("state appellate court").[1] (ECF No. 5-10, Exh. 10.) Tate raised the following assignment of error:

> Assignment of Error: The trial court erred to the prejudice of the Defendant-Appellant by denying his post-sentence motion to withdraw his plea in violation of his due process rights as guaranteed by the Fifth and Fourteenth Amendment to the United States Constitution and Sections 10 and 16, Article 1 of the Ohio Constitution.

(ECF No. 5-12, Exh. 12.)

On June 30, 2011, the trial court's ruling was affirmed. (ECF No. 5-14, Exh. 14.)

On August 15, 2011, Tate, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the following proposition of law:

> Proposition of Law No. 1: A Court of law is bound to protect the right of due process guaranteed to a defendant under the United States Constitution and the Constitution of the State of Ohio.

(ECF No. 5, Exhs. 16 & 17.)

On November 16, 2011, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 5-19, Exh. 19.)

---

[1] On August 10, 2010, appellate counsel from the Lake County Public Defender's office was appointed. (ECF No. 5-3, Exh. 3.)

**C.    Federal Habeas Petition**

On September 18, 2012, Tate filed a Petition for Writ of Habeas Corpus and asserted the following ground for relief:

> GROUND ONE: Petitioner's due process rights guaranteed by the United States constitution were violated with prejudice upon the affirmation of the Ohio appellate court, which upheld the trial court's decision to deny his expeditious and expedient motion to withdraw his plea of guilt – clearly obtained under duress.
>
> Supporting Facts: Prior to sentencing the Petitioner through intimidation, threats, and deception from his attorney, was vigorously encouraged to one resolve – to take a plea deal and plead contrary to his professed innocence to the charges against him.  Due to the breakdown of communication and confrontational relationship between Petitioner and attorney, Petitioner unsuccessfully attempted to sever ties with said attorney.  Petitioner subsequently filed a complaint with the State Bar Association.  Copies wer[e] delivered to the trial court.  Petitioner was doggedly scheduled and delivered to trial without any pre-trial preparation o[r] consultation regarding trial particulars.  Petitioner was brought into the courtroom and paraded in front of an all white jury[.]  Petitioner's verbal motion to disqualify his attorney to the trial court was callously denied.  After a forty five minute discussion in chambers between attorney, prosecutor, and trial court, Petitioner was immediately given two choices from his attorney: one, to take a plea deal to where he would serve the offered minimum of six years; verses [sic] two, continue to trial with an attorney h[e] expressed he had no confidence in and face the possible maximum of nineteen years.  Petitioner, stating to the court that he felt h[e] had no choice, and plead guilty to the charges and was sentenced to the dangling carrot of six years.  He filed a handwritten motio[n] to withdraw his plea. Without a hearing to address the clear manifest injustice, his motion was denied in violation of th[e] Petitioner's constitutional right to due process."

(ECF No. 1.)

### III.  Review on the Merits[2]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

---

[2]  Respondent concedes that Tate's lone ground for relief was fairly presented to state courts on direct appeal.  (ECF No. 5 at 7.)  As such, this Court will proceed straight to the merits of the petition.

("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond

-8-

any possibility for fairminded disagreement." *Id*. at 786–87. This is a very high standard, which the Supreme Court readily acknowledged. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### A. Ground One: Guilty Plea Entered Under Duress

In his sole ground for relief, Tate argues that his guilty plea was not entered knowingly, intelligently, and voluntarily, because his counsel was ineffective and the trial court refused to appoint a public defender. (ECF Nos. 1 & 7.) Specifically, Tate asserts that counsel did not "see him at jail ... to go over defense strategies, but to inquire into when and how he was going to be paid ...." (ECF no. 7 at 2.) Tate contends that the trial court left him with no option other than to either plead guilty or proceed to trial with his existing counsel in whom he had no trust. *Id*.

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.") A trial court should ensure that a "defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id*., *quoting United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). "A failure by counsel to provide advice may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *United States v. Broce*, 488 U.S. 563, 574 (1989); *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973)

(ineffective assistance of counsel may prevent a defendant from entering a knowing and voluntary plea); *accord United States v. Bradshaw*, 1998 U.S. App. LEXIS 10517 (6th Cir. May 20, 1998) (a claim that a defendant received ineffective assistance of counsel, or that his guilty plea was coerced, is "not ordinarily ... barred by an apparent unconditional guilty plea.") However, "[i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Id*. (*quoting Mabry v. Johnson*, 467 U.S. 504, 508 (1984)).

Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  "[T]he Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Carley v. Hudson*, 563 F. Supp. 2d 760, 771 (N.D. Ohio 2008) (citing *Hill v Lockhart*, 474 U.S. at 58).  Under *Strickland*, a petitioner must demonstrate the following: 1) "counsel's representation fell below an objective standard of reasonableness" and 2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).  To satisfy the second prong in the guilty plea context, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59.

The state appellate court addressed this argument as follows:

[*P30] **Was the Plea Knowingly, Intelligently, and Voluntarily Made?**

-10-

[*P31]  Under Crim.R. 11(C)(2), "the trial judge may not accept a plea of guilty or no contest [**12] without addressing the defendant personally and (1) '[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing,' (2) informing the defendant of the effect of the specific plea and that the court may proceed with judgment and sentencing after accepting it, and ensuring that the defendant understands these facts, and (3) informing the defendant that entering a plea of guilty or no contest waives the constitutional rights to a jury trial, to confrontation, to compulsory process, and to require proof of guilt beyond a reasonable doubt and determining that the defendant understands that fact." *State v. Clark*, 119 Ohio St.3d 239, 2008 Ohio 3748, ¶27, 893 N.E.2d 462, citing Crim.R. 11(C)(2)(a) through (c).

[*P32]  "Generally, a guilty plea is deemed voluntary if the record demonstrates the trial court advised the defendant of (1) the nature of the charge and the maximum penalty involved, (2) the effect of entering a guilty plea, and (3) that the defendant will be waiving his [**13] constitutional rights by entering the plea." *State v. Dudas*, 11th Dist. Nos. 2008-L-081 and 2008-L-082, 2008 Ohio 7043, ¶30, citing *Madeline*, *supra*.  In determining whether a guilty plea is knowingly, intelligently, and voluntarily entered, the reviewing court must look to the totality of the circumstances.  *State v. Carter* (1979), 60 Ohio St.2d 34, 38, 396 N.E.2d 757.

[*P33]  Here, Mr. Tate had previously discharged court-appointed counsel and retained the private counsel on his own. On the day of trial, immediately before the jury was to be empanelled [sic], Mr. Tate asked the court to discharge his private attorney and to be appointed a public defender.  The court investigated the matter, engaging in a lengthy discussion with Mr. Tate and his attorney.  Mr. Tate stated: "[Attorney] Morgan made it pretty clear to me that he was not going to represent to [sic] me to the fullest of his capability because I didn't have any more money for him."  He also claimed they never went over the case together and his attorney "hasn't researched it or anything."

[*P34]  In response, his attorney represented to the court that he was prepared and ready to go to trial, stating: "Your Honor, I've never laid down in Court in my 20 some years.  The issue of compensation is an issue between Mr. Tate and myself, not between the Court and myself.  Despite whatever that may have occurred, I've always assured him that I'm going to fight for him in the Courtroom."  Regarding his preparation for the trial, the attorney represented to the court that he had visited Mr. Tate in jail four or five times; had reviewed the file; and had gone over the file with him.

[*P35]  Mr. Tate also expressed his doubt that his attorney would represent him to the fullest of his ability because he had advised him to "cop out." The court reminded Mr. Tate he had expressed a similar lack of confidence in his prior court-appointed counsel. It explained to him it was his counsel's obligation to candidly appraise the merit of the case and to recommend a plea bargain when appropriate. The court emphasized it would be up to him, however, to decide whether to take the recommendation. After satisfying itself with Mr. Tate's attorney's preparedness for trial, the court denied Mr. Tate's request to change counsel.

[*P36]  After Mr. Tate opted to change his plea and take the plea bargain offered by the state, the trial court engaged in an extensive colloquy with him to ensure that he understood the charges against him; that he was making the plea voluntarily; and that he was aware he was giving up the rights of a jury trial, confrontation, and a proof of guilt beyond a reasonable doubt.

[*P37]  On appeal, Mr. Tate does not dispute the thoroughness of the plea colloquy conducted by the court before accepting his guilty plea.  Rather, his claim is that he was essentially coerced into pleading guilty after the trial court refused to replace his counsel, who he believed to be ineffective.

[*P38]  The transcript of the change of plea hearing shows the trial court fully investigated Mr. Tate's allegation and satisfied itself with his attorney's preparedness before denying his request to substitute counsel.  Mr. Tate did not allege any facts for his claim of coercion other than stating broadly that he "felt" he was "pressured into making the plea without fully understanding [his] options." The trial court must hold a hearing on a post-sentence motion only if "the facts alleged by the defendant and accepted as true would require the trial court to permit withdrawal of the plea." *Whiteman*, *supra*.  Mr. Tate's one-paragraph letter, devoid of specific factual allegations and unsupported by any evidentiary materials, fell short of meeting a defendant's burden in a post-sentence motion to withdraw the guilty plea.  Therefore, the trial court did not abuse its discretion in denying the motion.

[*P39]  Mr. Tate cites *State v. Hamed* (1989), 63 Ohio App.3d 5, 577 N.E.2d 1111, to support his claim.  In that case, the defendant pled no contest and the trial court accepted the plea.  After sentencing, the defendant moved to withdraw his guilty plea, claiming he had been denied the effective assistance of counsel when entering his plea.  He submitted an affidavit in support his motion, alleging that (1) prior to advising the defendant to enter his no contest plea, his counsel failed to discuss the facts of the case with him or interview potential witnesses; (2) his counsel disregarded information he produced which identified the true offender for the crime charged; (3) his attorney told him that he would be found guilty whether he had committed the crime or not; and (4) his attorney advised

-12-

> him to plead no contest in order to resolve the case without offending the trial judge.
>
> [*P40]  The Eighth District concluded the trial court should have conducted a hearing to determine the truth of the defendant's allegations regarding counsel's ineffective assistance before ruling on his motion to withdraw his plea.  The court emphasized the defendant had "specifically enumerated fundamental duties which his trial counsel failed to perform."
>
> [*P41]  In the instant case, Mr. Tate made broad, vague allegations in his motion to withdraw that he "had insufficient counsel"; he "was not represented in the proper manner"; and he "was pressured into making the plea without fully understanding [his] options."  Unlike in *Hamed*, Mr. Tate did not articulate any particular duties his trial counsel failed to perform, and no affidavits or other evidentiary materials were submitted to support his claims.  Thus, Mr. Tate's reliance on *Hamed* is misplaced.
>
> [*P42]  The assignment of error is without merit.

*Tate*, 2011-Ohio-3293 at ¶¶30-42.

The Court finds nothing unreasonable about the appellate court's determination that Tate failed to present anything more than general and unexplained assertions about his counsel being insufficient.  During the plea hearing, Tate informed the trial court that he believed his counsel was "not going to represent him to the fullest of his capability."  (ECF No. 5-6, Tr. 5.)  The trial court noted that Tate's counsel had visited him at jail four or five times, though Tate indicated that counsel asked him about his fees on each occasion.  (Tr. 10.)  When the trial court repeated that defense counsel had represented he was prepared for trial and would do his best regardless of whether his fees had been paid, Tate stated that he just did not feel in his heart and gut that counsel would do so.  *Id*.  The trial court indicated that Tate's gut feeling was not a sufficient reason to replace counsel on the day trial was set to begin, and further noted that Tate had given the same reason to discharge the previously appointed public defender.  (Tr. 11.)  Thereafter, Tate made a rather vague allegation that counsel had told his family members there were

"statements against [him]" but he was told the opposite. (Tr. 11-12.) The Court denied Tate's last minute motion to replace his privately hired counsel with a public defender. (Tr. 13.) As such, the state appellate court was not unreasonable in finding that there was simply no factual basis for Tate's assertion that counsel was unprepared. Nothing Tate filed in the state appellate court or the instant action contains any facts to support his allegation that counsel was unprepared, nor does he assert that key witnesses with beneficial information were ignored.

Furthermore, before the trial court accepted Tate's plea, it conducted a plea colloquy and found that Tate knowingly, intelligently, and voluntarily pleaded guilty. (ECF No. 5-6, Tr. 45.) The court inquired into Tate's education level, to which Tate responded that he obtained a GED and was attending college. (Tr. 17.) In response to the court's questions, Tate denied having consumed alcohol, drugs, or medication within the preceding 48 hours. *Id*. Although Tate indicated he would prefer to be appointed a public defender rather than enter a plea, Tate indicated that he was satisfied with his current counsel's representation. (Tr. 19-20.) The court further explained to Tate that he had a right to a jury trial and did not have to enter a plea. *Id*. at 19, 22-23. When the court asked if anyone had threatened him to induce his plea, Tate answered, "No." *Id*. at 21. Tate further indicated that he was freely and voluntarily entering a plea of guilty. *Id*. The prosecution explained the evidence they were prepared to set forth if the matter proceeded to trial. (Tr. 33-37.) Tate admitted that the facts and circumstances set forth by the prosecutor were true and accurate. (Tr. 38.) Tate further admitted that he had indeed committed each and every crime to which he plead guilty, and at no point professed that he was innocent of the crimes charged. (Tr. 38-43.)

In his Traverse, Tate argues, for the first time, that he maintained his innocence while

entering the plea agreement, and that the trial court's inquiry was insufficient under *North Carolina v. Alford*, 400 U.S. 25 (1970).  (ECF No. 7 at 4-6.)  Tate's belated and self-serving argument is unsupported by the record and blatantly contradicted by his admissions during the plea hearing.  It also was not raised in his appellate brief during his direct appeal.  (ECF No. 5-12, Exh. 12.)  Moreover, Tate misconstrues *Alford*, which found that "while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is *not* a constitutional requisite to the imposition of criminal penalty."  400 U.S. at 37 (emphasis added) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.")  The Sixth Circuit has expressly held that "there is no constitutional requirement that a trial judge inquire into the factual basis of a plea ... and more recently noted that [t]he requirement that a sentencing court must satisfy itself that a sufficient factual basis supports the guilty plea is not a requirement of the Constitution, but rather a requirement created by rules and statutes."  *Bonior v. Conerly*, 416 Fed. Appx. 475, 478 (6th Cir. 2010) (internal quotation marks omitted), *citing United States v. Tunning*, 69 F.3d 107 (6th Cir. 1995).

In sum, when entering his plea, Tate answered all of the questions in a manner which could reasonably lead the court to believe the plea was knowingly, intelligently, and voluntarily entered.  Tate has not presented this Court with any specific facts or allegations that would support finding that his counsel was ineffective.  This Court cannot find that the state appellate court's determination was contrary to or an unreasonable application of clearly established federal law, or that the court's determination of the facts in light of the evidence presented was

unreasonable.

As such, Tate's sole ground for relief is without merit.

## V.  Conclusion

For the foregoing reasons, it is recommended that Tate's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: December 5, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.**  *See United States v. Walters*, **638 F.2d 947 (6th Cir. 1981).**  *See also Thomas v. Arn*, **474 U.S. 140 (1985),** *reh'g denied*, **474 U.S. 1111 (1986).**